## WETMORE *a.* HOLSMAN.

*Supreme Court, First District ; Special Term, March,* 1862.

RESCINDING MARRIAGE SETTLEMENT.—INFANCY.—MISAPPREHENSION.—RES ADJUDICATA.

Preoccupation of mind, surprise, and a misapprehension on the part of the grantor of the legal effect of a deed, afford no ground for setting it aside, in the absence of fraud, undue influence, mistake, or error.

Trial by the court.

This action was brought by Maria M. C. Wetmore against Daniel Holsman, Charles F. Wetmore, and Katharine H. Wet-

more, to set aside a marriage settlement executed by the plaintiff, in contemplation of marriage with the defendant C. F. Wetmore, to the defendant Holsman and another, in trust, on the ground of the infancy of the plaintiff at the time of executing such settlement, and of alleged misapprehensions on her part of its effect. The complaint prayed that the defendant Holsman be directed to reconvey and retransfer to the plaintiff the real and personal estate owned by her before her marriage, with all accumulations thereof, and that the defendants C. F. and K. H. Wetmore be devested of any rights or interest which they, or either of them, claimed to have acquired under the instrument. It appeared in evidence that the plaintiff had brought an action in the Superior Court of the city of New York against Holsman and another, to have the marriage settlement rescinded, on the ground of infancy,* in which action judgment had been rendered for the defendants.

*John G. Vose* and *Edwards Pierrepont*, for the plaintiff.—It is a plain proposition that, as a general rule, a conveyance of lands by an infant is not voidable, but absolutely void. No settlement resembling the one now under examination has ever been sustained, either in England or this country.

In the only instance in England, the settlement has secured to the infant some consideration out of the husband's estate, or some protection against his exercise of the rights which, but for the settlement, would have been conferred on him by the marriage; and to secure to the wife these advantages, the court have deemed it equitable to uphold the settlement. As the law now stands in England, such settlements are invalid. (Caruthers *a*. Caruthers, 4 *Brown's Ch. Cas.*, 500; Clough *a*. Clough, 5 *Ves.*, 710, 717; Milner *a*. Lord Harewood, 18 *Ib.*, 289; Simpson *a*. Jones, 2 *Russ. & Myl.*, 365.) In this State such settlements have not been sustained. (Temple *a*. Hawley, 1 *Sandf. Ch.*, 153; Wetmore *a*. Kissam, 3 *Bosw.*, 321.) There is no doubt or difficulty about the question of the absolute invalidity of the conveyance. The only difficulty arises from the notion that the wife cannot avoid it during coverture. And this is founded solely upon the language found in the earlier English

---

* Wetmore *a*. Kissam, 3 *Bosw.*, 321.

cases, that the conscience of the husband is bound not to aid the wife in defeating the instrument, and that as she cannot act without his consent, which he cannot be allowed to give, therefore she cannot act at all.

It is found that she has given him a valuable life-estate in her property, which she had no thought of giving, nor he of receiving. It would seem that his delicacy as well as his conscience are bound to a restitution of this part. It cannot be that the court are compelled to decline for his wife the justice ready to be done for her, and to tell the husband that his conscience is bound not to aid her in resuming the estate she has been devested of by a void conveyance.

It is conceded on all hands that the wife discovert could do all that is asked for here. It is the coverture which alone prevents.

While the fictitious notion about the husband's conscience prevailed, the whole difficulty there was, that he was bound by his conscience not to aid her, and without his aid she could not disaffirm.

Does she need his aid now ? Of what force are our three statutes of 1848, 1849, and 1860, if the wife married in 1855 is still unable without her husband's aid to disaffirm a conveyance of her own property made in 1855 ?

If it was valid when made, his consent was not requisite ; if invalid by reason of her infancy, his consent could not make it valid ; neither can his inability, by reason of his conscience or otherwise, to give his consent to her disaffirmance prevent her exercising that right.

The settlement is not equitable any more than it is lawful that a woman should be deprived of her property by a written instrument signed by her while an infant, when she had no power of disposition.

*John Pyne,* for defendant Holsman.—I. This action is not brought to obtain relief from the ante-nuptial settlement in question, as oppressive or disadvantageous to the plaintiff, nor as having been obtained from the plaintiff by undue influence or incorrect representations, or by advantage taken of her ignorance or carelessness, although all these are alleged as naked facts in the complaint, but simply to have the said ante-nuptial

agreement declared void.  An infant's contracts are not void *ab initio*, especially such as relate to real estate, but are merely voidable at the option of the infant upon coming of age, and until so annulled, are valid.  This is settled law.  (Bool *a.* Mix, 17 *Wend.*, 119; Gillet *a.* Stanley, 1 *Hill*, 121; Eagle Fire Co. *a.* Lent, 6 *Paige*, 635; Van Nostrand *a.* Wright, *Hill & D. Supp.*, 260; Dominick *a.* Michael, 4 *Sandf.*, 374, 416; Temple *a.* Hawley, 1 *Sandf. Ch.*, 153, which is the case of an ante-nuptial settlement by an infant.)

II.  Contracts made between persons in contemplation of marriage remain in full force after the marriage has taken place.  (*Rev. Stat.*, pt. 2, ch. 8, tit. 1, art. 6, § 79.)  This section is general in its terms, and does not make any exception in the case of infants.  (Drury *a.* Drury, 2 *Eden's Ch.*, 39, 60; S. C., 8 *Wend.*, 297; Tabb *a.* Archer, 3 *Hen. & Mun.*, 418; Leigh *a.* Stewart, 2 *Leigh*, 76; Harvey *a.* Ashley, 8 *Wend.*, 331, *note*, per Lord Hardwicke.)

III.  The contract,—*i. e.*, the trust-deed,—not being void *ab initio*, is valid and effectual until annulled by the plaintiff on attaining her majority.  But at that period she was, and has been ever since, feme covert, and is accordingly incompetent to repudiate her contracts, or exercise any other act without the concurrence of her husband, who, being a party to it, is not allowed to aid her in annulling the same.  (Milner *a.* Hasewood, 18 *Ves.*, 275, by Lord Eldon; Temple *a.* Hawley, 1 *Sandf. Ch.*, 153; Wilson *a.* McCullough, 7 *Harris Penn.*, 77; Leigh *a.* Stewart, 2 *Leigh*, 76.)

IV.  The matter is *res adjudicata*.

V.  Were the circumstances under which the trust-deed was executed such as to entitle the plaintiff to come into a court of equity for relief, such court would, before interfering, inquire and ascertain whether it were for the real interest of the plaintiff that the trust should continue or be extinguished, and would take into consideration the importance of protecting a married woman against her own acts, which may be supposed to be more or less influenced by her husband.

*Benjamin Stephens, Jr.*, guardian *ad litem* for K. H. Wetmore.—I.  The language of the marriage settlement is popular and plain.  It was duly read over to plaintiff aloud, and was

duly executed by her, under her own hand and seal, and duly acknowledged so as to entitle it to be recorded. Whatever the understanding of the plaintiff may have been, as to the settlement being merely a "formal and customary accompaniment of a marriage ceremony," no such representation is alleged to have been made to her; and as no misrepresentation or concealment is charged, no imposition or fraud alleged, no undue influence or misplaced confidence pretended, the instrument cannot be impeached for a mere error of opinion.

II. This court will not set aside Mrs. Wetmore's voluntary conveyance, on her application, on the ground that she was ignorant what was its legal effect and operation. Courts do not undertake to relieve parties from their acts and deeds fairly done, with a full knowledge of the facts, though under ignorance of the law. "Ignorantia legis non excusat." Everybody is bound and therefore presumed to know the law. This rule is as much respected in courts of equity as at law. (Lyon *a.* Richmond, 2 *Johns. Ch.*, 51, 60; Storrs *a.* Barker, 6 *Ib.*, 166, 170; Crosier *a.* Acer, 7 *Paige*, 137; Hall *a.* Reed, 2 *Barb. Ch.*, 500; Dupre *a.* Thompson, 4 *Barb.*, 279; Gilbert *a.* Gilbert, 9 *Ib.*, 532; Arthur *a.* Arthur, 10 *Ib.*, 9.)

III. The marriage settlement being a contract upon a valuable consideration—the marriage (the highest consideration known to the law), nothing in exchange for it is excessive or extravagant; its value cannot be ascertained in dollars. (2 *Eq. Cas. Ab.*, 585; *Bald.*, 351, 361.) Mrs. Wetmore, although a minor at the time, is absolutely bound, as to her personal estate of every species, which passed to and rested in her trustee irrevocably. There can be no question as to the power of a female infant to bind, by a settlement before marriage, her personal property. This is clearly settled. (Simpson *a.* Jones, 2 *Russ. & Mylne*, 376; *Atherley on Mar. Settl.*, 11 *Law Lib.*, 13, 24; *Roper on Husb. & Wife*, 16 *Ib.*, 21, 26; *Macqueen on Husb. & Wife*, 50 *Ib.*, 61, 62, 249, 250; *Macpherson on Infants*, 25 *Ib.*, 329, 522; Tabb *et al. a.* Archer *et al.*, 3 *Hen. & Munf.*, 399, 406–409; Strong *a.* Wilkin, 1 *Barb. Ch.*, 9; Temple *a.* Hawley, 1 *Sandf. Ch.*, 153, 169.)

IV. Mrs. Wetmore being still under coverture, therefore cannot maintain this action. (*Atherley on Mar. Settl.*, 11 *Law Lib.*, 21, 22, 39, 41; *Macqueen on Husb. & Wife*, 50 *Ib.*, 63, 251,

252; *Macpherson on Infants*, 25 *Ib.*, 329, 522; 2 *Hoverden on Frauds*, 83; Drury *a.* Drury, *Wilmot's opin.*, 207; S. C., 2 *Eden*, 73; Milner *a.* Lord Harewood, 18 *Ves.*, 275; *Roper on Husb. & Wife*, 16 *Law Lib.*, 22, 27; 2 *Leigh.*, 76; Shaw *a.* Boyd, 5 *Serg. & Rawle*, 312; Wilson *a.* McCullough, 7 *Harris* (19 *Penn.*), 77, 87; Temple *a.* Hawley, 1 *Sandf. Ch.*, 153, 168.) A provision for the offspring of a marriage, is one of the great and immediate objects of an ante-nuptial settlement; it would indeed be a most strange omission, or rather defect in the law, if the wife, exposed so long as coverture exists to marital control (an influence so subtle in its operation that no laws can be made so strict as to preclude its perversion), should, while still " sub potestate viri," be permitted to rescind the marriage settlement, and thus expose her property, and interests of possible issue, to be imperilled by the improvidence, misfortunes, and criminality of the husband, the very objects against which the settlement was designed to protect. All experience demonstrates that vesting the wife with unlimited control of her property, will place it in more jeopardy than limiting it by a judicious settlement. (Watson *a.* Bonney, 2 *Sandf.*, 405, 415.)

V. In the case before the court, one child has been born to the plaintiff, the infant defendant, Katherine H. Wetmore. The marriage settlement cannot be set aside by this court, for the child is in judgment of law a purchaser. The infant child of the plaintiff has a contingent future interest which this court cannot devest. The law will not direct a reconveyance of the settled estate to the settlor, in derogation of the interests of third parties. No decree can be made that could preclude this infant, in the event of the plaintiff's death during the lifetime of its father, from asserting its own title under the marriage settlement, in opposition to that of any purchaser or other person whatsoever. For such a proceeding no pernicious precedent can be found. (Tabb *et al. a.* Archer *et al.*, 3 *Hen. & Munf.*, 399, 406–409; Shaw *a.* Boyd, 5 *Serg. & Rawle*, 312; Merritt *a.* Scott, 5 *Georgia*, 563, 573; Eaton *a.* Tillinghast, 4 *Rhode Is.*, 276; Healey *et al. a.* Rowan *et al.*, 5 *Grattan*, 414, 430; Watson *a.* Bonney, 2 *Sandf.*, 405, 416, 417; Dominick *a.* Michael, 4 *Ib.*, 374, 419–421.)

VI. Under the present system of pleading, this act of disaffirmance must be averred in the complaint and must be proved.

The court will require to be satisfied that the act of disaffirmance alleged to have been done by the plaintiff is such as will justify it in setting aside the settlement. (Watson *a.* Bonney, 2 *Sandf.*, 405; Wheaton *a.* East, 5 *Yerg.*, 41; Voorhies *a.* Voorhies, 24 *Barb.*, 150; Bool *a.* Mix., 17 *Wend.*, 119, 131; Gillett *a.* Stanley, 1 *Hill*, 121.)

VII. The marriage contract of an infant feme is valid by the statute laws of the State of New York, and Mrs. Wetmore cannot be relieved by this court. By the Married Woman's Act (*Laws of* 1848, ch. 200, § 4; *Laws of* 1849, ch. 375, § 3), it is enacted, that "all contracts made between persons in contemplation of marriage shall remain in full force after such marriage takes place." This is an exception of such contracts made by infant femes, by a substitutive enactment, from the operation of the rules of law, which have governed them before. The words are general, including all such contracts, without distinguishing whether made by persons who were of age or under age. In the leading case of Drury *a.* Drury (*Wilmot's opin.*, 177; 2 *Eden*, 60), it was adjudged that infants are equally bound with adults, under the statute of 27 Henry VIII., even by an equitable jointure. The words of that act are, "every woman married, having jointure made, shall not claim nor have any title to dower." This opinion was approved by Justice Nelson in McCartee *a.* Teller (8 *Wend.*, 267, 275), in reference to our own statute as to jointures, which was a transcript of that of Henry VIII.

VIII. The marriage settlement is equitable and beneficial in its terms.

IX. This case has once before been submitted to the decision of the Superior Court, and the plaintiff's complaint dismissed. It is therefore *res adjudicata* and the complaint in this court must now be dismissed. (Wetmore *a.* Kissam, 3 *Bosw.*, 321.)

PECKHAM, J.—In this case there is neither allegation nor proof of any fraud or undue influence in the procurement or execution of the trust-deed. It was done with the knowledge and sanction of plaintiff's mother, and of her general guardian. In fact, the guardian was made one of the trustees, and her brother the other. There is no allegation or proof in any manner impeaching the capacity or integrity of the trustees, or

either of them; no word of complaint against their management of the estate; nothing against the conduct of the now remaining trustee, her brother.

It is said the complainant did not understand the deed when read to her; that it was done suddenly, and without reflection —when her thoughts were elsewhere. This is a very delicate and, I may say, novel ground of relief. No fraud or undue influence being pretended, no mistake alleged, no error committed, it will scarcely do to say that, although she knew the general object and purpose of the deed,—and it has substantially effected that purpose,—yet it shall be set aside because she failed to observe or remember some of the details of the deed.

The subject of executing this deed, or a deed of trust, was called to her attention some weeks prior to its execution. She assented to the proposition of putting her property in trust. On the evening prior to her marriage, it was carefully read over to her. It was executed and acknowledged the next morning. She was then within about a month of being twenty years of age, an educated, intelligent young woman. It can scarcely be alleged under such circumstances that she had not sufficient knowledge or understanding of the deed to render its execution valid. In fact, there is not a word now proved against its provisions. It is complained that her husband has a contingent life-estate in the property, in case he survives her; but she nowhere alleges or pretends that she would not have made that or an equally liberal provision. She says it was made "without her wish or consent;" careful language, not against her consent, because she says she did not understand it; not that she would not have done so, if she had understood it; no unkind feeling between the parties now; no reason why so ordinary and rational a provision should not have been made by an affectionate woman for her intended husband. She necessarily from the facts understood the deed in substance. The delivery of the deed implied from its acknowledgment before a competent officer is not disproved. The deed was produced before me. There can be no doubt of its legal delivery.

It is objected that the trustees are not authorized to borrow money by mortgage to improve the estate. I do not so understand the deed. They are expressly authorized to repair and

improve and to borrow money. Thus, they are clearly author-ized to mortgage.

If money cannot so readily be borrowed on mortgage by trustees, that is an incident to all valid trusts, and is no ground for holding them invalid. But I have very little faith in the financial wisdom of improvements by way of mortgages. The increased income thus sought to be produced is frequently a mere fancy. The mortgage is always a stern fact.

In my judgment, there is nothing left of this case except the mere fact that this deed was executed by plaintiff when an infant. That question was distinctly settled between these parties in the Superior Court of New York, and stands here *res adjudicata.*

The complaint must be dismissed, with costs.